UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN P. MORGAN,

NO. CIV. S-09-2649 LKK/DAD

       Plaintiff,

   v.

O R D E R

JANET NAPOLITANO, SECRETARY,
U.S. DEPARTMENT OF HOMELAND
SECURITY, IMMIGRATION AND
CUSTOMS ENFORCEMENT, FEDERAL
PROTECTIVE SERVICE,

       Defendants.

_____/

    This case concerns plaintiff's employment with the Federal
Protective Service ("FPS") and the Department of Homeland Security
("DHS"). Plaintiff brings claims under the Age Discrimination in
Employment Act ("ADEA") and Title VII. Defendant moves to dismiss
plaintiff's hostile work environment claims under both acts for
lack of subject matter jurisdiction, to dismiss for failure to
state a claim as to both claims, and to dismiss certain types of
damages. For the reasons explained below, defendant's motion to
dismiss for lack of subject matter jurisdiction is denied. The

1

1  remaining motions are denied in part and granted in part.

2                        **I. BACKGROUND**

3       **A.   Factual Background**

4       Plaintiff Morgan, at all relevant times, was employed as a

5  Criminal Investigator, GS-1811-12, first by the FPS and later by

6  the DHS of which FPS became part. (Plaintiff's Third Amended

7  Complaint "TAC" ¶¶ 2, 3, 20.) From December 15, 2003 to May 25,

8  2005, plaintiff was the Acting Supervisory Criminal Investigator

9  at the GS-13 level. (TAC ¶ 20.) From March 1, 2005 to November

10 7, 2005, plaintiff was assigned on a temporary basis as Acting

11 Chief, Threat Management Branch at GS-14 level. (Id.) During his

12 employment at FPS and DHS, plaintiff properly and fully

13 performed the duties and responsibilities of both his normal and

14 temporary positions. (TAC ¶ 21.) Prior to November 3, 2005,

15 plaintiff did not perceive that he was subjected to unfair or

16 discriminatory treatment by his supervisors. (TAC ¶ 22.)

17      During his employment at FPS and DHS, plaintiff was

18 involved in a number of Equal Employment Opportunity ("EEO")

19 actions opposing discrimination including disability,

20 retaliation, hostile work environment, and age. (TAC ¶¶ 19A-C.)

21 In one instance, plaintiff was involved in an EEO action from

22 April to August 2007, for discrimination base on race, age, and

23 reprisal. (TAC ¶¶ 19D.) Further, during his employment at FPS

24 and DHS, plaintiff's wife was an attorney who represented

25 employees of departments now part of them against DHS in

26 discrimination actions based on sexual harassment, sex,

                              2

1  retaliation, non-compliance, hostile work environment, age, and

2  disability. (TAC ¶¶ 19E(1)-(7).)

3       Between November 4, 2005 and January 28, 2008, plaintiff

4  experienced several negative employment actions. (TAC ¶¶ 23-46.)

5  These negative employment actions include, but are not limited

6  to, denial of use of vacation and leave, suspension, non-

7  qualification for union representation, non-access to employee

8  files, non-consensual search of office and seizure of property,

9  denial of training, and non-selection for a number of

10 promotions. (TAC ¶¶ 23-46.)

11      In response to these negative employment actions, plaintiff

12 initiated two EEO actions alleging discrimination because of:

13 (a) his prior activity involving discrimination under Title VII

14 of the Civil Rights Act of 1964, as amended, and (b) his age in

15 violation of the Age Discrimination in Employment Act of 1967

16 ("ADEA"). (TAC ¶¶ 5-18.) Plaintiff's first administrative

17 complaint, EEO action 550-2008-00100X, was initiated on or about

18 March 31, 2006. (TAC ¶ 5.) Plaintiff's second administrative

19 complaint, EEO action 550-2009-000071X, was initiated on or

20 about February 22, 2008. (TAC ¶ 12.)

21      **B.   Procedural History**

22      On September 21, 2009, plaintiff filed a complaint against

23 defendant. Plaintiff alleged violations of Title VII and ADEA.

24 On February 18, 2010, plaintiff filed his first amended

25 complaint ("FAC"). On March 11, 2010, plaintiff filed a second

26 amended complaint ("SAC"). Defendant moved to dismiss this

complaint. On June 1, 2010, the court denied defendant's motion
on the grounds of subject matter jurisdiction, but granted the
motion for failure to state a claim. Plaintiff was granted leave
of twenty-one (21) days to file a third amended complaint
("TAC"). On June 21, 2010, plaintiff timely filed this
complaint. Defendant now moves to dismiss the complaint on
numerous grounds.

## II. STANDARDS

### A.    Fed. R. Civ. P. 12(b)(1) Motion to Dismiss

It is well established that the party seeking to invoke the
jurisdiction of the federal court has the burden of establishing
that jurisdiction exists. KVOS, Inc. v. Associated Press, 299
U.S. 269, 278 (1936); Assoc. of Medical Colleges v. United
States, 217 F.3d 770, 778-779 (9th Cir. 2000).  On a motion to
dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the standards that
must be applied vary according to the nature of the
jurisdictional challenge.

When a party brings a facial attack to subject matter
jurisdiction, that party contends that the allegations of
jurisdiction contained in the complaint are insufficient on
their face to demonstrate the existence of jurisdiction. Safe
Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).
In a Rule 12(b)(1) motion of this type, the plaintiff is
entitled to safeguards similar to those applicable when a Rule
12(b)(6) motion is made.  See Sea Vessel Inc. v. Reyes, 23 F.3d
345, 347 (11th Cir. 1994), Osborn v. United States, 918 F.2d

4

724, 729 n.6 (8th Cir. 1990); see also 2-12 Moore's Federal
Practice - Civil § 12.30 (2009).  The factual allegations of the
complaint are presumed to be true, and the motion is granted
only if the plaintiff fails to allege an element necessary for
subject matter jurisdiction.  Savage v. Glendale Union High Sch.
Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), Miranda
v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). Nonetheless,
district courts  "may review evidence beyond the complaint
without converting the motion to dismiss into a motion for
summary judgment" when resolving a facial attack. Safe Air for
Everyone,373 F.3d at 1039.

Alternatively, when a party brings a factual attack, it
"disputes the truth of the allegations that, by themselves,
would otherwise invoke federal jurisdiction." Id. Specifically,
a party converts a motion to dismiss into a factual motion where
it "present[s] affidavits or other evidence properly brought
before the court" in support of its motion to dismiss. Id.
Unlike in a motion to dismiss under Fed. R. Civ. P. 12(b)(6),
the court need not assume the facts alleged in a complaint are
true when resolving a factual attack. Id. (citing  White v. Lee,
227 F.3d 1214, 1242 (9th Cir. 2000). While the motion is not
converted into a motion for summary judgment, "the party
opposing the motion must [nonetheless] furnish affidavits or
other evidence necessary to satisfy its burden of establishing
subject matter jurisdiction." Id. When deciding a factual
challenge to subject matter jurisdiction, district courts may

1  only rely on facts that are not intertwined with the merits of

2  the action. Id.

3      **B.   Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

4      A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's

5  compliance with the pleading requirements provided by the

6  Federal Rules. In general, these requirements are established by

7  Fed. R. Civ. P. 8, although claims that "sound[] in" fraud or

8  mistake must meet the requirements provided by Fed. R. Civ. P.

9  9(b). Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-04 (9th Cir.

10  2003).

11      Under Federal Rule of Civil Procedure 8(a)(2), a pleading

12  must contain a "short and plain statement of the claim showing

13  that the pleader is entitled to relief." The complaint must give

14  defendant "fair notice of what the claim is and the grounds upon

15  which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

16  555 (2007) (internal quotation and modification omitted).

17      To meet this requirement, the complaint must be supported

18  by factual allegations. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

19  (2009). "While legal conclusions can provide the framework of a

20  complaint," neither legal conclusions nor conclusory statements

21  are themselves sufficient, and such statements are not entitled

22  to a presumption of truth. Id. at 1949-50. Iqbal and Twombly

23  therefore prescribe a two step process for evaluation of motions

24  to dismiss. The court first identifies the non-conclusory

25  factual allegations, and the court then determines whether these

26  allegations, taken as true and construed in the light most

favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).[1]

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at

---

[1] As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

1949 (quoting Twombly, 550 U.S. at 555). While Twombly was not

the first case that directed the district courts to disregard

"conclusory" allegations, the court turns to Iqbal and Twombly

for indications of the Supreme Court's current understanding of

the term. In Twombly, the Court found the naked allegation that

"defendants 'ha[d] entered into a contract, combination or

conspiracy to prevent competitive entry . . . and ha[d] agreed

not to compete with one another,'" absent any supporting

allegation of underlying details, to be a conclusory statement

of the elements of an anti-trust claim. Id. at 1950 (quoting

Twombly, 550 U.S. at 551). In contrast, the Twombly plaintiffs'

allegations of "parallel conduct" were not conclusory, because

plaintiffs had alleged specific acts argued to constitute

parallel conduct. Twombly, 550 U.S. at 550-51, 556.

   Twombly also illustrated the second, "plausibility" step of

the analysis by providing an example of a complaint that failed

and a complaint that satisfied this step. The complaint at issue

in Twombly failed. While the Twombly plaintiffs' allegations

regarding parallel conduct were non-conclusory, they failed to

support a plausible claim. Id. at 566. Because parallel conduct

was said to be ordinarily expected to arise without a prohibited

agreement, an allegation of parallel conduct was insufficient to

support the inference that a prohibited agreement existed. Id.

Absent such an agreement, plaintiffs were not entitled to

////

////

1   relief. Id.[2]

2      In contrast, Twombly held that the model pleading for

3   negligence demonstrated the type of pleading that satisfies Rule

4   8. Id. at 565 n.10. This form provides "On June 1, 1936, in a

5   public highway called Boylston Street in Boston, Massachusetts,

6   defendant negligently drove a motor vehicle against plaintiff

7   who was then crossing said highway." Form 9, Complaint for

8   Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C. App., p

9   829. These allegations adequately "'state[] . . . circumstances,

10  occurrences, and events in support of the claim presented.'"

11  Twombly, 550 U.S. at 556 n.3 (quoting 5 C. Wright & A. Miller,

12  Federal Practice and Procedure § 1216, at 94, 95 (3d ed. 2004)).

13  The factual allegations that defendant drove at a certain time

14  and hit plaintiff render plausible the conclusion that defendant

15  drove negligently.

16                    **III.  ARGUMENT**

17     **A.    Subject Matter Jurisdiction**

18     Defendant Napolitano argues that plaintiff has untimely

19  filed his new hostile work environment claims under ADEA and

20  Title VII and, thus, this Court should dismiss these claims for

21  lack of subject matter jurisdiction. (Defendant's Motion to

22  Dismiss "MTD" at 3.) Rule 15(c)(1) of the Fed. Rules Civ. P.

23

24      [2] This judge must confess that it does not appear self-evident
to him that parallel conduct is to be expected in all circumstances
25  and thus would seem to require evidence. Of course, the Supreme
Court has spoken and thus this court's own uncertainty needs only
26  be noted, but cannot form the basis of a ruling.

9

states that an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits.

In this case, plaintiff has not changed the party or the naming of the party against whom the claim is asserted with his latest amendment. Rather, as defendant points out in her motion, plaintiff has now asserted new claims of hostile work environments under ADEA and Title VII. (MTD at 4.) However, plaintiff has based these new claims on nearly the same facts as he plead for his previous claims in his original, first amended, and second amended complaints. (See Compl. ¶¶ 5-27; FAC ¶¶ 5-29; SAC ¶¶ 5-29.) Accordingly, plaintiff's newly-filed hostile work environment claims arise out of the same conduct and occurrences as the claims laid out in the previous complaints. Thus, plaintiff's most recent complaint relates back to the date of his previous complaints. Further, defendant notes in her motion that the statute of limitations was to run for these claims in May 2010. However, plaintiff's SAC was filed March 11, 2010.

Therefore, because plaintiff's TAC relates back to his previous complaints and plaintiff's SAC was timely filed, this Court has subject matter jurisdiction over plaintiff's hostile work environment claims under ADEA and Title VII. For the foregoing reasons, defendant's motion to dismiss plaintiff's hostile work environment claims is denied.

**B.   Failure to State a Claim**

**1.   Plaintiff's ADEA Discrimination Claim**

Defendant argues that plaintiff has failed to identify why the negative employment actions alleged in the TAC constitute unlawful discrimination. (MTD at 5.) This argument rests upon the fact that plaintiff has simply listed a number of negative employment actions and then made a conclusory statement that these actions are due to age discrimination.[3] (TAC ¶¶ 23-51.) Nowhere in his TAC does plaintiff allege that persons substantially younger than him were subjected to preferential treatment. For example, plaintiff does not allege any facts in his third amended complaint that younger and less qualified employees received promotions to which plaintiff was entitled.

Defendant heavily relies on the pleading standards set forth in <u>Bell Atl. Corp. v. Twombly</u> and its progeny. In order to

---

[3] The court notes that plaintiff has pled some facts that support a claim for retaliation under ADEA. (<u>TAC</u> ¶¶ 19, 52-55.) While plaintiff has not specifically alleged a claim for retaliation under ADEA, he nonetheless need not identify the statute under which he brings his claims to state a claim under that statute. For clarity's sake, the court instructs plaintiff to identify the appropriate statutes under which he brings his claims in his fourth amended complaint.

survive Rule 12(b)(6) dismissal, a complaint must contain
sufficient factual allegations to "state a claim for relief that
is plausible on its face." Ashcroft v. Iqbal, 555 U.S. __, 129
S.Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007)). "A claim has facial plausibility when the
plaintiff pleads sufficient factual content that allows the
court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." Id. (quoting Twombly, 550
U.S. 544, 556 (2007)). Further, pleadings consisting of "labels
and conclusions" or a "formulaic recitation of the elements of a
cause of action will not do." Id. (quoting Twombly, 550 U.S.
544, 555 (2007))("Threadbare recitals of the elements of a cause
of action, supported by merely conclusory statements, do not
suffice.").

However, Twombly explicitly did not overturn the Supreme
Court's holding in Swierkievicz v. Sorema N.A. Twombly, 550 U.S.
544, 569-70 (2007) (discussing Swierkievicz, 536 U.S. 506
(2002)). Plaintiff in Swierkievicz brought claims under ADEA and
Title VII for unlawful termination. In Swierkievicz, the Court
held that an employment discrimination complaint under ADEA and
Title VII need not contain specific facts establishing a prima
facie case, but instead "must contain only 'a short and plain
statement of the claim showing that the pleader is entitled to
relief.'" Swierkievicz, 534 U.S. at 508 (quoting Rule 8(a)(2) of
Fed. R. Civ. P.). Swierkievicz alleged that he was terminated on
account of his national origin and age in violation of ADEA and

Title VII. Further, his complaint described several events leading to his termination, providing relevant dates, and including the ages and nationalities of "*at least some of the relevant persons involved* with his termination." Id. at 514 (emphasis added). The Court concluded that this was enough to give the respondent notice of petitioner's claims and the grounds upon which they rest. Id. Thus, Swierkievicz stated a claim upon which relief could be granted under ADEA and Title VII. Id.

In this case, by listing a series of negative employment actions and claiming that they resulted from age discrimination, plaintiff has almost pled enough to give defendant notice of what petitioners claims are and the grounds on which they rest. However, plaintiff in the case at bar has not pled his claims as required in Swierkievicz. Like the plaintiff in Swierkievicz, plaintiff has detailed the events leading up to the negative employment actions and the relevant dates. (TAC ¶¶ 1-46.) Unlike Swierkievicz, however, plaintiff has not referenced age in regard to *any of the relevant parties involved* in the negative employment actions.

Plaintiff has attempted to correct this problem in a proposed Fourth Amended Complaint. The proposed amendment does fix some, but not all, of the pleadings errors. For this reason, the court does not grant plaintiff leave to file his proposed amendment. Rather, plaintiff is granted leave to file a fourth amended complaint in which he shall specifically allege for each

1   negative employment action some facts that suggest that this

2   action was taken because of his age if in fact that was the

3   case. These allegations must be specific as to each negative

4   employment action. For example, if plaintiff was denied a

5   promotion on January 1, 2007, he may allege that a substantially

6   younger and less qualified person received that promotion or

7   other facts to support that he was denied that specific

8   promotion because of age. Blanket, general allegations are not

9   sufficient to allege facts from which the court can infer

10  causation.

11           **2.**     **Plaintiff's Title VII Retaliation Claim**

12      Plaintiff claims that he was retaliated against in

13  violation of Title VII for his involvement in his own EEO cases

14  as well as the cases of others against FPS and DHS in violation

15  of Title VII. (TAC ¶¶ 19A-D, F.) Additionally, plaintiff claims

16  that he was retaliated against for his wife's protected

17  involvement in discrimination cases against FPS and DHS. (TAC ¶

18  19E.) At the hearing on this motion plaintiff's counsel

19  indicated that he also seeks to bring claims of retaliation

20  under Title VII where he was accused of "aiding and abetting"

21  his wife's litigation against defendant. Plaintiff has alleged

22  no facts under this theory in his TAC or his proposed fourth

23  amended complaint.

24           **a.**   **Direct Retaliation**

25      Plaintiff again seeks to bring claims for retaliation under

26  Title VII that do not concern conduct protected under the Act.

1   Title VII makes it unlawful for an employer to discriminate only
2   on the basis of race, color, religion, sex, or national origin.
3   42 U.S.C. § 2000e-16(a). There are no allegations that plaintiff
4   was discriminated against because of his race, color, religion,
5   sex, or national origin or that he complained or brought claims
6   that he was discriminated on the basis of one of these
7   categories. However, plaintiff has alleged that he participated
8   in race discrimination claims of Douglas Neibauer and Nathan
9   Bailey in April 2007. Further, he has alleged negative
10  employment actions occurring after April 2007. TAC ¶¶ 44-46.
11  Based upon these allegations, the court can infer causation.

12      Plaintiff also argues that conduct occurring before April
13  2007 is retaliatory under Title VII. As a matter of logic, one
14  cannot be retaliated against for conduct in which he has not yet
15  engaged. Thus, defendant's motion to dismiss is granted insofar
16  as plaintiff alleges retaliatory acts occurring before April
17  2007 and is denied as to retaliatory acts occurring after April
18  2007. Defendant's motion is also granted as to all theories of
19  direct retaliation but for retaliation because of plaintiff's
20  involvement in the Neibauer and Bailey proceedings.

21              **b.   Third Party Retaliation**

22      Plaintiff's complaint also raises the question of whether
23  he can bring a claim for retaliation under Title VII because of
24  his wife's activities. The Ninth Circuit has not addressed the
25  issue of whether an employee who is retaliated against because
26  of the protected activities of another person may bring a claim

under Title VII. However, the Supreme Court has recently granted

certiorari to resolve the split of authority that exists

regarding whether Title VII prohibits employer retaliation

against an employee based on a close friend or relative

coworker's protected activities.[4] <u>Thompson v. N. Am. Stainless,</u>

<u>L.P.,</u> 567 F.3d 804 (6th Cir. 2009), *cert. granted*, 130 S.Ct.

3542 (U.S. Jun 29, 2010) (NO. 09-291). Although plaintiff's

complaint does not present a typical third-party retaliation

situation in that his wife is not employed by Defendant,

examining third-party retaliation cases, including those

evaluating the issue under the ADA and the ADEA,[5] is instructive

for analyzing plaintiff's claim.

Courts allowing third-party retaliation claims[6] have

_____

[4] If the Supreme Court decides that Title VII does not protect individuals from third party discrimination, defendant is instructed to move for reconsideration of this order only as to its ruling on third party retaliation.

[5] The anti-retaliation provisions of Title VII, the ADA, and the ADEA are similarly constructed and, therefore, are similarly interpreted. <u>See</u> 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a); <u>see also</u> <u>Trans World Airlines v. Thurston</u>, 469 U.S. 111, 121 (1985)(applying Title VII principles to ADEA claims); <u>Walsh v. Nevada Dept. of Human Resources</u>, 471 F.3d 1033, 1038 (9th Cir. 2006) ("The statutory scheme and language of the ADA and Title VII are identical in many respects."); <u>Fogleman v. Mercy Hosp.,</u> <u>Inc.,</u> 283 F.3d 561, 570-71 (3d Cir. 2002)(noting that because anti-retaliation provisions of the ADA, ADEA, and Title VII were practically identical, precedent interpreting one of them was relevant to interpreting the others); <u>Brown v. Brody</u>, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999) (stating that standards used to evaluate Title VII claims are applied to claims under ADA and ADEA).

[6] <u>McDonnell v. Cisneros</u>, 84 F.3d 25 (7th Cir. 1996); <u>Wu v.</u> <u>Thomas</u>, 863 F.2d 1543, 1547-49 (11th Cir. 1989); <u>Johnson v.</u> <u>Napolitano</u>, 686 F. Supp. 2d 32, 35 (D.D.C. 2010); <u>Gonzalez v. N.Y.</u> <u>State Dep't, Corr. Serv.</u>, 122 F. Supp. 2d 335, 346-47 (N.D.N.Y.

conceded that such claims do not come "within the scope of the

retaliation provision of Title VII if interpreted literally"[7]

because "[t]hat provision merely forbids the employer to

'discriminate against any individual . . . because he has made a

charge . . . or participated in any manner in an investigation,

proceeding, or hearing under' Title VII." <u>McDonnell v. Cisneros</u>,

84 F.3d 256, 262 (7th Cir. 1996) (citing 42 U.S.C. §

2000e-3(a)). Even though Congress did not expressly include

third-party retaliation in§ 2000e-3(a), its purpose was to

ensure that no person would be deterred from exercising his or

her Title VII rights by the threat of retaliation. <u>See</u>

<u>Burlington N. and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 63

(2006) (stating that anti-retaliation provision seeks to

preventing an employer from interfering with an employee's

efforts to enforce Title VII's basic guarantees); <u>DeMedina v.</u>

2000); <u>EEOC v. Nalbandian Sales, Inc.</u>, 36 F. Supp. 2d 1206, 1210-11
(E.D. Cal. 1998); <u>Murphy v. Cadilac Rubber & Plastics, Inc.</u>, 946
F. Supp. 1108, 1118 (W.D.N.Y. 1996); <u>De Medina v. Reinhardt</u>, 444
F. Supp. 573, 580 (D.D.C. 1978).

    [7] Courts that have rejected the viability of third-party
retaliation claims have done so based solely on a "plain language"
interpretation of the anti-retaliation provisions of Title VII, the
ADA, and the ADEA. *See* <u>Fogleman v. Mercy Hospital, Inc.</u>, 283 F.3d
561, 564 (3d Cir. 2002); <u>Holt v. JTM Industries, Inc.</u>, 89 F.3d
1224, 1226 (5th Cir. 1996); <u>Smith v. Riceland Foods, Inc.</u>, 151 F.3d
813, 819 (8th Cir. 1998); <u>Thompson v. N. Am. Stainless, LP</u>, 567 F.3d
804 (6th Cir. 2009), *cert. granted*, ___ U.S. ___, 130 S.Ct. 3542
(Jun. 29, 2010); <u>Singh v. Green Thumb Landscaping, Inc.</u>, 390 F.
Supp. 2d 1129, 1138 (M.D. Fla. 2005); <u>Higgins v. TJX Co., Inc.</u>, 328
F. Supp. 2d 122, 124 (D. Me. 2004); <u>U.S. EEOC v. Bojangles
Restaurants</u>, Inc., 284 F. Supp. 2d 320 (M.D.N.C. 2003); <u>Horizon
Holdings, L.L.C. v. Genmar Holdings, Inc.</u>, 241 F. Supp. 2d 1123,
1144 (D. Kan. 2002).

1  <u>Reinhardt</u>, 444 F. Supp. 573, 580-81 (D.C.D.C. 1978). Because

2  allowing employers to engage in third-party retaliation would

3  deter persons from exercising their rights under Title VII,

4  simply applying the "plain meaning" interpretation to the anti-

5  retaliation provisions would frustrate Congress's ultimate

6  purpose in enacting such provisions--preventing harm to

7  employees that report discriminatory employment practices or

8  assist in the investigation of these practices. <u>Crawford v.</u>

9  <u>Metro. Gov't of Nashville and Davidson County, Tenn.</u>, 129 S. Ct.

10 846, 852 (2009); <u>EEOC v. Nalbandian Sales, Inc.</u>, 36 F. Supp. 2d

11 1206, 1213 (E.D. Cal. 1998) (permitting suit on plaintiff's

12 claim that he was not rehired because his sister had filed EEOC

13 charges against employer).

14      The Equal Employment Opportunity Commission's (EEOC)

15 interpretation of Title VII's anti-retaliation provisions is

16 also consistent with allowing third-party retaliation claims.

17 The EEOC Compliance Manual states that the anti-retaliation

18 provisions "prohibit retaliation against someone so closely

19 related to or associated with" the person engaging in protected

20 activity that it would deter that person from engaging in such

21 activity. <u>See</u> EEOC Compliance Manual, Section 8-II(B)(3)(c),

22 "Person Claiming Retaliation Need Not Be the Person Who Engaged

23 in Opposition," 8-9 (1998). Although EEOC Guidelines are not

24 binding on the courts, they "constitute a body of experience and

25 informed judgment to which courts and litigants may properly

26 resort for guidance." <u>Federal Express Corp. v. Holowecki</u>, 552

1   U.S. 389, 400 (2008) (quoting <u>Bragdon v. Abbott</u>, 524 U.S. 624,

2   642 (1998)); <u>see also Gutierrez v. Municipal Court</u>, 838 F.2d

3   1031, 1049 (9th Cir. 1988).

4       Plaintiff's wife has represented her husband's coworkers in

5   individual employment discrimination claims against Defendant.

6   <u>See</u> TAC ¶ 19E. In her representation of Defendant's employees,

7   Plaintiff's wife effectively stands in the shoes of those

8   employees and becomes the conduit by which they exercise their

9   Title VII rights. <u>See</u> BLACK'S LAW DICTIONARY (8th ed. 2004)(defining

10  representation as "[t]he act or an instance of standing for or

11  acting on behalf of another, esp. by a lawyer on behalf of a

12  client"). Allowing Defendant to retaliate against Plaintiff

13  because his wife represented employees suing Defendant for

14  employment discrimination would dissuade her from taking such

15  cases on behalf of Defendant's employees. Further, the

16  difficulties in proof and restrictions on damages in employment

17  discrimination cases make it extremely difficult to secure

18  counsel, especially on an individual basis. <u>Cf.</u> 110 CONG. REC.

19  12724 (1964) (remarks of Sen. Humphrey). Without her

20  representation, employees that otherwise would have been able to

21  bring discrimination charges against defendant would be less

22  likely to secure counsel and thus no longer be able to exercise

23  their rights to engage in such protected activity.

24       A broad interpretation of anti-retaliation provisions is

25  necessary to ensure that "unfettered access to statutory

26  remedial mechanisms" is preserved. <u>Robinson v. Shell Oil Co.</u>,

519 U.S. 337, 346 (1997). <u>See also</u> <u>EEOC v. Waffle House</u>, 534 U.S. 279, 296 n.11 (2002). Congress also enacted Title VII, and similar remedial statutes like the ADA and ADEA, to prevent and deter discriminatory acts through encouraging plaintiffs to act as "private attorneys general," vindicating Congressional policy of the highest priority and advancing the public interest. <u>See</u> <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 522-23 (1994); <u>Walker v. Carnival Cruise Lines</u>, 107 F. Supp. 2d 1135, 1143 (N.D. Cal. 2000). To further that goal, Congress enacted fee-shifting statutes to provide both victims of discrimination and their attorneys with the incentive and encouragement to bring employment discrimination cases. <u>See</u> 42 U.S.C. 2000e-5(k); <u>see also</u> <u>Indep. Fed'n of Flight Attendants v. Zipes</u>, 491 U.S. 754, 761 (1989); <u>N.Y. Gaslight Club, Inc. v. Carey</u>, 447 U.S. 54, 63 (1980) (stating that Congress enacted section 2000e-5(k) to facilitate the bringing of discrimination complaints). Defendant's alleged retaliation against Plaintiff because of his wife's representation of its employees will ultimately thwart Congress's purpose for enacting such statutes by depriving defendant's employees of counsel and the benefits of her representation. Thus, the court decides that plaintiff may state a claim for third party retaliation because of his wife's legal representation of his co-workers in discrimination lawsuits.

### c.   Leave to Amend

It appears to the court that plaintiff's claims for retaliation because of his wife's conduct and because of

accusations that he aided and abetted his wife's conduct depend upon her practice of bringing claims under multiple federal anti-discrimination laws, namely Title VII, the ADA, and the ADEA. Consequently, his retaliation claim is not premised upon her representation of a single client, but rather because of her continued involvement in a series of anti-discrimination suits, some of which are brought under Title VII, some under the ADA, some under the ADEA, and some under various combinations of the statutes. Thereby, the alleged retaliation cannot be pinpointed as violation of one statute, but rather under all three simultaneously.

In order to provide clarity in plaintiff's fourth amended complaint, the court instructs plaintiff to allege two separate causes of action. First, plaintiff may allege a claim of direct retaliation resulting from accusation that he aided and abetted his wife's representation of his co-workers in suits brought under Title VII, the ADA, and the ADEA. This single cause of action may be pled under the three statutes together. Second, plaintiff may allege a separate claim of third party retaliation for his wife's conduct brought under Title VII, the ADA, and the ADEA together.

The court does not grant leave to amend under any other theories of liability. Plaintiff may only bring the retaliation claims described above under all three statutes and the claims of retaliation under Title VII premised upon plaintiff's involvement in Neibauer's and Bailey's EEO investigations.

### 3.   Hostile Work Environment

In his TAC, plaintiff has added allegations of a hostile work environment under Title VII and ADEA. As to his ADEA claim, plaintiff merely makes the conclusory statement that, "The continuous harassment of Plaintiff because of his age had the effect of unreasonably interfering with his work performance and created an intimidating, hostile and offensive work environment." TAC ¶ 48. Plaintiff then incorporates the factual section of the complaint to support the conclusory statement. The court cannot find any allegations in the complaint to support this hostile work environment claim. Likewise, plaintiff alleges a virtually identical conclusory statement for a hostile work environment for retaliation under Title VII. The court similarly cannot find any allegations in his complaint to support this conclusion. Thus, plaintiff's ADEA and Title VII claims are dismissed for failure to state a claim insofar as they are premised upon a theory of hostile work environment. Plaintiff is granted leave to amend his complaint to include allegations of specific facts that constitute a hostile work environment.

### C.   Motion to Dismiss Damages

Defendant moves to dismiss plaintiff's demand for certain types of damages under ADEA. Here, plaintiff seeks recovery of compensatory damages under ADEA not only for economic losses, but also for "non-economic losses, including, but not limited to, discouragement, embarrassment, emotional distress,

humiliation, indignity and a reduced quality of life." (TAC ¶ 51.) ADEA, however, does not provide recovery of damages for pain and suffering or emotional distress. 29 U.S.C. ¶¶ 216(b), 626(b). Moreover, the Ninth Circuit has expressly noted that "compensatory damages for pain and suffering are not available under ADEA," and that relief is limited to "judgments compelling employment, reinstatement, or promotion, the recovery of unpaid minimum wages or overtime pay, and reasonable attorneys' fees and costs." Ahlmyer v. Nevada System of Higher Educ., 555 F.3d 1051, 1059 (9th Cir. 2009) (internal quotations omitted). Thereby, the court grants defendant's motion on this ground.

    Defendant also moves to dismiss plaintiff's "demand" for liquidated damages. Plaintiff does not specifically demand liquidated damages. Rather, plaintiff alleges that defendant engaged in "willful conduct" in violation of the ADEA. (TAC ¶ 50). Section 626(b) of ADEA allows for awards of liquidated damages when a defendant's conduct is willful. Defendant cites to non-binding authority holding that liquidated damages may not be awarded against the federal government under ADEA. Here, plaintiff has nowhere specifically demanded liquidated damages. Rather, defendant infers such a demand from plaintiff's allegation of "willful conduct." It appears that defendant is attempting to preclude a type of relief without evidence that plaintiff is even seeking such relief. The court declines to reach the merits of this issue at this time and, thus, defendant's motion to dismiss liquidated damages is denied.

**IV. CONCLUSION**

For the foregoing reasons, the court orders as follows:

(1)   Defendant's motion to dismiss on the grounds of lack of subject matter jurisdiction, ECF No. 25, is DENIED.

(2)   Defendant's motion to dismiss for failure to state a claim, ECF No. 25, under ADEA is GRANTED.

(3)   Defendant's motion to dismiss for failure to state a claim, ECF No. 25, under Title VII is DENIED insofar as plaintiff brings a claim for retaliation for participating in Neibauer's and Bailey's EEO investigation and under the third party retaliation theory and the accusations of aiding and abetting theory only with respect to his wife's representation. It is otherwise GRANTED.

(4)   Plaintiff is granted leave of twenty-one (21) days to amend only the following theories:

(a)   Hostile work environment under ADEA and Title VII.

(b)   Discrimination under ADEA.

(c)   Retaliation under Title VII, the ADEA, and the ADA under the theories discussed above.

Plaintiff is not granted leave to amend under any other theories. If plaintiff seeks to amend under any additional theories, he must first file a motion for

////

////

1        leave to amend.

2    IT IS SO ORDERED.

3    DATED:  September 22, 2010.

4

5

6                          LAWRENCE K. KARLTON
7                          SENIOR JUDGE
                           UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26